**EXHIBIT A**

State of Illinois )<br>
) ss<br>
County of St. Clair )

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY**
**IN SUPPORT OF COMPLAINT FOR FORFEITURE**

I, Michael Rehg, do hereby depose and declare under penalty of perjury the following:

At all times relevant herein, I have been a Special Agent (SA) with the Drug Enforcement Administration (DEA). The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1. On September 26, 2016, agents with the DEA Fairview Heights Resident Office were conducting surveillance of a residence located in St. Louis, Missouri. Agents were investigating the occupant of the residence as a known distributor of heroin and cocaine.

2. At about 1:00 p.m. a white 2007 Mercedes Benz, registered to Arron WHITT, arrived at the residence. Agents observed WHITT exit his vehicle and open the passenger door of his vehicle. WHITT appeared to be digging, as if looking for an item underneath the rear seat. WHITT then removed a white bag with handles on it and walked into the residence. Agents were familiar with WHITT from a previous DEA investigation in which WHITT was federally convicted of a drug crime.

3. At about 1:20 p.m. agents observed WHITT exit the residence carrying the same white bag with handles. Agents observed WHITT look all around, as if making sure no one was watching. WHITT placed the white bag with handles back into his Mercedes Benz and drove away from the area.

4. Due to the knowledge agents had of WHITT's involvement with drug crimes, agents decided to continue mobile surveillance of WHITT. Agents observed WHITT drive back into Illinois at which time agents contacted the St. Clair County Sheriff's Department. Agents informed K9 Deputy Jacob Hoffman (Deputy Hoffman) that they believed the vehicle to be involved in a drug activity and to keep a look out for it.

5. During the telephone conversation, Deputy Hoffman was located at Illinois State Route 159 at Interstate 64 and was able to position his patrol vehicle behind WHITT as WHITT exited Interstate 64. As WHITT came to the intersection of Illinois State Route 159 at U.S. Highway 50, WHITT made a left hand turn onto U.S. Highway 50 while the traffic control device was red. WHITT continued on U.S. Highway 50 and made right turn onto Collinsville Road. Deputy Hoffman activated his emergency lights to conduct a traffic stop. WHITT stopped near the intersection of Old Collinsville Road and Ashland Avenue in Fairview Heights, St. Clair County, Illinois.

6. Deputy Hoffman made contact with WHITT, informed WHITT for the reason of the stop, and requested WHITT's insurance information. While speaking with WHITT, Deputy Hoffman noticed that WHITT appeared to be nervous. Deputy Hoffman could also smell a strong odor of what appeared to be cologne coming from the vehicle.

7. Deputy Hoffman returned to his patrol vehicle to check the status of WHITT's driver's license. Deputy Hoffman learned that WHITT had a valid driver's license and was clear of any warrants. Deputy Hoffman returned to WHITT's vehicle and asked WHITT to exit the vehicle. Deputy Hoffman explained to WHITT that WHITT appeared to be nervous and asked WHITT if he had anything illegal in the vehicle. WHITT stated "no." Deputy Hoffman informed

WHITT that he had a narcotics K9 in the back of the patrol vehicle and asked WHITT for permission to search his vehicle. WHITT replied "I don't know why you have to search but if you want to run the dog around go ahead."

8. Deputy Hoffman retrieved K9 Tor from his patrol vehicle and walked K9 Tor to the front of WHITT's vehicle to start the search. K9 Tor started at the front of the vehicle and continued down the passenger side of the vehicle searching high and low. K9 Tor stopped near the back rear passenger side tire. K9 Tor sat down and his breathing changed, which is a positive indication for narcotic odor.

9. After returning K9 Tor to the patrol vehicle, Deputy Hoffman informed WHITT of the positive alert on his vehicle. Deputy Hoffman conducted a search of the vehicle and located a white Macy's bag which contained United States currency. The currency was located in a rear passenger side compartment which Deputy Hoffman turned and opened with his hand.

10. Deputy Hoffman contacted DEA agents via telephone and advised that he had located a large amount of United States currency while searching WHITT's vehicle. DEA Task Force Officer Thomas Peters (TFO Peters) responded to the scene to speak with WHITT.

11. TFO Peters had WHITT sit in the front passenger seat of his vehicle and took a recorded statement from WHITT. TFO Peters read WHITT his Miranda Warning prior to taking the recorded statement.

12. During the statement WHITT stated that he worked at Lindenwood University as an Administrative Assistant in the Criminal Justice Department and was a full time Masters student at the University. WHITT stated that he also worked at St. John Bosco Children's Center in Belleville, Illinois.

13. When asked about the large amount of currency located in his vehicle, WHITT stated that he had been saving up the money for about the past five years, and that it was his entire life savings. WHITT also stated he had about $40,000.00 in student loans which he gets cash back on and had money in the bank. WHITT then stated he received $25,000.00 in a lawsuit about two years ago but did not want to put it in the bank so he keeps it on him.

14. WHITT further stated that the previous night he had driven back from his grandmother's residence in Birmingham, Alabama. WHITT stated that he drove straight to work after driving overnight. WHITT then left work and returned home to take a shower and then drove to East St. Louis, Illinois to the rice house for food. WHITT stated that the rice house was closed and he was returning from East St. Louis, Illinois when stopped by the police. WHITT stated that was all he did that day and had not been anywhere else.

15. An official count was made of the seized currency resulting in the total amount of $32,920.00.

16. In October of 2016, WHITT and his attorney contacted affiant concerning the seizure of the subject-matter currency. Affiant told WHITT's attorney that the seizure had been turned over to the DEA by the St. Clair County Sheriff's Department. WHITT's attorney told affiant that the money seized from WHITT was not drug money. Affiant told WHITT's attorney that WHITT was welcome to come into the DEA office and explain where the money came from. At this time neither WHITT's attorney nor WHITT were aware of DEA's involvement in this case.

17. On February 16, 2017, WHITT and his attorney met with affiant and TFO Greg Hosp at the Fairview Heights Residence Office. Affiant was familiar with WHITT from his past arrest in which WHITT was convicted and sent to federal prison. WHITT and affiant spoke briefly about the

past investigation and the circumstances surrounding WHITT's arrest. WHITT was in good spirits and told affiant that he was meeting with agents under different circumstances on this occasion because he had nothing to hide and that he left drug dealing in the past.

18. Affiant told WHITT that agents were willing to listen to him regarding the seizure of the currency. In summary, WHITT told agents that he received employment income from Caritas Family Solutions and Lindenwood University. WHITT also said that he was provided about $15,000.00 per year in school loans. In total, WHITT claimed that he received about $95,000.00 since December 2014 up until the seizure in September 2016. WHITT also provided his estimated expenses of $52,000.00 for a 19-month time period before the seizure. WHITT was not clear if any taxes, school tuition, etc. came off these figures.

19. At that time, agents asked WHITT about the events that led to the seizure of the currency on September 26, 2016. WHITT told agents that he had traveled to Birmingham, Alabama on September 24, 2016. WHITT stated that his father and grandmother reside in Birmingham and that he travels there frequently to visit. WHITT told agents that he had been taking various amounts of cash to Birmingham for some time. WHITT said that he would hide the money in his grandmother's residence without her knowledge. WHITT claimed that over time, he accumulated over $33,000 at her house.

20. Agents asked WHITT why he did not keep his money at his house or in a bank. WHITT claimed he was afraid he would spend it if he could get to it easily. Yet, WHITT had almost $12,000.00 in the bank at the time of the interview.

21. WHITT stated that he had departed Birmingham around midnight on September 25, 2016, and traveled back to O'Fallon, Illinois. WHITT told agents that he had grabbed the money

from his grandmother's house before leaving. Agents asked WHITT what he was going to do with the money and WHITT did not reply.

22. WHITT said that he travelled straight from Alabama and arrived at work at about 6:00 a.m. WHITT told agents that he left the money inside his vehicle while at work. At approximately 10:00 a.m. WHITT said he went home (to O'Fallon, Illinois) and slept until about 12:30 p.m., again leaving the money in his vehicle. WHITT told agents that he then traveled from O'Fallon, Illinois to East St. Louis in hopes of eating at a Chinese restaurant on State Street. Again, WHITT claimed the money was still in his vehicle. WHITT stated that the restaurant was closed and he traveled directly back towards home. WHITT stated that on his way home he was stopped by the police and the money was seized from his vehicle.

23. Agents asked WHITT if he stopped anywhere or met with anyone in East St. Louis before travelling home. WHITT told agents that he did not stop anywhere and did not meet with anyone. WHITT became noticeably nervous to everyone in the room and began to bead up in sweat. Agents again asked if WHITT stopped anywhere or met with anyone prior to the money being seized. WHITT again told agents "no." Agents then took a short break from the interview to copy some of WHITT's financial notes.

24. Upon returning to the interview room, WHITT and his attorney told agents that WHITT was nervous because he thought agents were going to ask about a girlfriend of WHITT's. Agents asked WHITT if he met her that day. WHITT replied "no." Agents asked WHITT why he became so nervous when asked if he had met with anyone. WHITT again began to sweat. Agents asked WHITT if he had traveled anywhere else. WHITT told agents he didn't think so.

25. At this time affiant informed WHITT that he saw WHITT deliver a kilogram of

cocaine to a residence in St. Louis, Missouri prior to WHITT being stopped by the police. Affiant told WHITT that he watched WHITT pull a kilogram of cocaine from the second row area of his vehicle and take it into the house. Affiant then told WHITT that he later watched WHITT bring the bag of money out to the vehicle and then depart the area. Affiant told WHITT that agents were aware that WHITT had been paid approximately $33,000 for the kilogram of cocaine. At that time, the sweat was actually dripping from WHITT's nose and was coming through his shirt. Affiant then asked WHITT, "Am I lying or making this up?" and WHITT replied "no." Affiant went on to ask WHITT if he was willing to cooperate with agents. WHITT said he really does not associate with those people any longer. At that time, WHITT's attorney stopped the conversation and said he would need some time to speak with his client.

26. WHITT was previously convicted of four counts of Distribution of Cocaine in the Southern District of Illinois on September 5, 2008, in *United States v. Arron Whitt*, 07-cr-30018-DRH and was sentenced to three years on each count with all terms to run concurrently.

27. Based on the foregoing, declarant further believes that the subject-matter $32,920.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of April, 2017.

MICHAEL REHG
Special Agent
Drug Enforcement Administration